**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

|  |  |
|---|---|
| DYNAMIC MESH NETWORKS, INC. DBA MESHDYNAMICS, <br><br> Plaintiff, <br><br> v. <br><br> CISCO SYSTEMS, INC., CISCO WEBEX LLC, WEBEX COMMUNICATIONS, INC. <br><br> Defendant. | Case No. <br><br> Jury Trial Demanded |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Dynamic Mesh Networks, Inc. d/b/a MeshDynamics  ("MeshDynamics") files this Complaint against Cisco Systems, Inc., Cisco WebEx LLC, and WebEx Communications, Inc. ("Cisco" or "Defendants") for patent infringement of United States Patent Nos.: 8,514,852; 9,049,000; and 8,477,762 (collectively the "Patents-in-Suit" and attached hereto as Exhibit 1-3 respectively), and alleges as follows:

## NATURE OF THE ACTION

1.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.* and seeking damages and injunctive relief as provided in 35 U.S.C. §§ 281 and 283-285.

## THE PARTIES

2.      MeshDynamics is a corporation organized under laws of the State of California with its principal place of business situated at 3355 Benton St, Santa Clara CA 95051.

3.      MeshDynamics was founded by Francis daCosta who is the lead inventor on all of the Patents-in-Suit.  Mr. daCosta is a graduate of Stanford University where he earned a Master of Science degree.  He is named as an inventor on at least 20 United States patents.  Mr. daCosta also founded Advanced Cybernetics Group providing robot control system software for mission critical applications.  He has served as an advisor to the United States Air Force Robotics and Automation Center of Excellence.

4.      In the early 2000s, Mr. daCosta and MeshDynamics focused on enabling the self-forming, tree-shaped wireless mesh networks that are ubiquitous today.  That work resulted in solutions that were significantly more efficient and scalable than prior art systems.

5.      For example, traditional hub-based wireless mesh networks suffered from poor scalability.  As the number of nodes increased, the number of potential paths in those networks grew exponentially, making routing inefficient and unmanageable.  Those networks also experienced data collision, high latency and/or congestion as the links between the nodes were difficult to optimize.  Changes in network membership also required time-consuming updates to routing tables which further degraded performance.

6.      The tree-shaped and hierarchically arranged wireless mesh networks contemplated by Mr. daCosta dynamically balanced the needs of the network and optimized performance for a wide variety of uses.  These networks maintain readily manageable routing paths and utilize distributed decision-making about node relationships and routing selections. The result is a highly scalable and efficient system that quickly adapts networks to optimize both latency and bandwidth based on network use.  The enhancements delivered by these novel networks enable the effective implementation of advanced techniques, including modern-day wireless equivalents of ethernet switching.

7.      On information and belief, defendant Cisco Systems, Inc. is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 170 West Tasman Drive, San Jose, California 95134 and regular and established places of business throughout this District, including at least 2250 East President George Bush Turnpike, Richardson, Texas 75802.

8.      On information and belief, Cisco Systems, Inc. may be served with process through its registered agent, Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company located at 211 E. 7th Street, Suite 620, Austin, TX 78701.

9.      On information and belief, defendant Cisco WebEx LLC is a corporation organized under the laws of the State of Delaware with a principal place of business at 170 West Tasman Drive, San Jose, California 95134 and regular and established places of business throughout this District, including at least 2250 East President George Bush Turnpike, Richardson, Texas 75802.  On information and belief, Cisco WebEx LLC is doing business, either directly or through its agents, on an ongoing basis in this District.

10.     On information and belief, Cisco WebEx LLC may be served with process through its registered agent, Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, 211 E. 7th St., Suite 620, Austin, TX 78701-3218.

11.     On information and belief, defendant WebEx Communications, Inc. is a corporation organized under the laws of the State of California with a principal place of business at 170 West Tasman Drive, San Jose, California 95134 and regular and established places of business throughout this District, including at least 2250 East President George Bush Turnpike, Richardson, Texas 75802.  On information and belief, Webex Communications, Inc. is doing business, either directly or through its agents, on an ongoing basis in this District.  On

information and belief, WebEx Communications, Inc. was acquired by Cisco Systems, Inc. on March 15, 2007.

12.    On information and belief, WebEx Communications, Inc. may be served with process through its registered agent, Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, 211 E. 7th St., Suite 620, Austin, TX 78701-3218.

13.    Cisco is the manufacturer of a variety of hardware devices and related software and solutions, which it uses internally and collectively markets and sells as integrated solutions to its customers and end users.  This includes VoIP collaboration products and solutions, including, for example, Cisco Webex (the "'762 Accused Products"), and Cisco networking equipment and solutions, including, for example, Cisco SD-WAN solutions and equipment with Forward Error Correction ("FEC") (the "'852/'000 Accused Products") (collectively, the "Cisco Accused Products").

14.    Cisco also offers design, architectural, installation, training, guidance, deployment, management, operation, licensing, consulting, and technical support services related to its customers' and/or end-users' deployment and use of the Cisco Accused Products.

## JURISDICTION AND VENUE

15.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the federal patent laws of the United States.

16.    This Court has personal jurisdiction over Cisco because it committed and continues to commit acts of infringement in this judicial district in violation of 35 U.S.C. §§ 271(a), 271(b), and 271(c).

17.    Cisco has made, used (including to support its own businesses), sold, offered for sale, imported into, developed, and tested Cisco Accused Products in this District.  It has induced

others to use those products by acts carried out by Cisco employees in this District and, as a result of those acts, its customers and/or end-users have used such infringing products in this District.

18.     Cisco is subject to the Court's jurisdiction because it regularly conducts and solicits business, otherwise engages in other persistent courses of conduct in this judicial district, and/or derives substantial revenue from the use, sale, and distribution of goods and services, including but not limited to the accused Cisco Accused Products provided to individuals and businesses in the Eastern District of Texas.

19.     Cisco maintains multiple regular and established places of business throughout this Judicial District, including at least 2250, 2300 and 2400 East President George Bush Turnpike, Richardson, Texas 75082.  Cisco has a regular and established physical presence in this District.  Its facilities in Richardson can accommodate up to 5,000 employees, consists of approximately 71 acres of land, and includes approximately seven buildings totaling approximately 1.7 million square feet of office space (collectively referred to herein as the "Richardson Texas Campus").

20.     Cisco employs thousands of individuals within its Richardson Texas Campus some of whom are uniquely knowledgeable concerning the use, development, marketing, importation, and/or sales of the Cisco Accused Products.

21.     Cisco has purposefully availed itself of the rights and benefits of the laws of the State of Texas and this District.  It has previously conceded that the Eastern District of Texas has personal jurisdiction over it for the purpose of litigation of patent infringement actions as an accused infringer.  Cisco has previously availed itself of the Courts of the Eastern District of

Texas as a patentee, including through its assertion of claims of patent infringement in litigations venued in this district.

22.     Cisco has substantial, continuous, and systematic contacts with this State and the Eastern District of Texas such that the exercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice.  Jurisdiction is consistent with the principles of due process and the Texas Long Arm Statute Tex. Civ. Prac. & Rem. Code §§ 17.041, et seq.

23.     Venue is proper pursuant to 28 U.S.C. §§ 1391(b), (c), (d) and/or 1400(b), at least because Cisco has committed acts of infringement in this judicial district and has regular and established places of business in this judicial district.

## THE PATENTS-IN-SUIT

24.     The Patents-in-Suit are United States Patent Nos. 8,514,852 ("the '852 patent"); 9,049,000 ("the '000 patent"); and 8,477,762 ("the '762 patent").

25.     Each of the Patents-in-Suit is presumed valid under 35 U.S.C. § 282.

26.     MeshDynamics owns all rights, title, and interest in each of the Patents-in-Suit, including the right to recover for all past and ongoing infringement.

27.     MeshDynamics has not granted Cisco an approval, an authorization, or a license to any rights under any of the Patents-in-Suit.

28.     The claimed inventions in the Patents-in-Suit sought to solve problems with, and improve upon, existing networks.  None are directed to the operation of generic computers.

## United States Patent No. 8,514,852

29.     The '852 patent, entitled "Real time package transforms to avoid re-transmission," was duly and legally issued by the USPTO on August 20, 2013 to inventors Francis daCosta and Sriram Dayanandan.

30.     The '852 patent is directed to a specific technological improvement in the functioning of networks, including improvements in efficiently transporting real time streams (*e.g.*, video) over a network.  The invention reduces re-transmission delays in real time feeds (such as video) by sending a packet with sufficient repair/recovery information so receiving devices can fix errors in transmission by using the contents of the packet and the repair information, modify the packet, and then relay it.  By providing the receiver the ability to fix the error, re-transmission of the packet is avoided.  The invention presents a concrete and specific solution to technical problems associated with conventional networks, such as effective throughput loss and increased effective transmission delay (also referred to as latency) from the re-transmission of packets.

31.     The claims of the '852 patent recite a specific and inventive combination of elements that improve network performance in a manner that is not routine or conventional.  Unlike standard network transmission techniques, the claimed invention enables the receiver to repair and/or reconstruct a lost or corrupted packet.  The receiver is able to easily identify the redundant information necessary for this repair and/or reconstruction.  The receiver may then determine whether the repair and/or reconstruction was successful before the packet and data information moves through the network.

32.     The claims recite specific, particularized, unconventional, technical solutions, including, for example: (1) modifying a packet by adding redundant information; (2) modifying a

7

packet header to add a position offset reference number that points to the redundant information; (3) revising checksums within the packet as modified; (4) modifying the packet by retrieving the redundant information and replacing a portion of the packet if the modified packet is determined to have a checksum mismatch as received; and (5) modifying the packet to return to the standard packet format.

33.    The '852 patent claims present specific, non-conventional and non-routine technical advancements for transmitting real time streams in networks in a way that enhances reliability and efficiency.

## United States Patent No. 9,049,000

34.    The '000 patent, entitled "Real time package transforms to avoid re-transmission," was duly and legally issued by the USPTO on June 2, 2015 to inventors Francis daCosta and Sriram Dayanandan.

35.    Like the '852 patent, the claims of the '000 patent address specific, non-conventional and non-routine technical advancements for transmitting real time streams in networks in a way that enhances reliability and efficiency.

## United States Patent No. 8,477,762

36.    The '762 patent, entitled "Self-forming VoIP Network," was duly and legally issued by the USPTO on July 2, 2013 to inventors Francis daCosta and Sriram Dayanandan.

37.    The '762 patent is directed to a specific technological improvement in the functioning of VoIP-capable networks, including improvements in efficiently transporting real time streams (*e.g.* voice and/or video) over a network.  The network is enabled with distributed Session Initiation Protocol ("SIP") functionality, allowing mesh topology and continuity of voice

and video communication links when network connections to a central server conventionally

required for VoIP communications are unexpectedly terminated or not yet established.

38.     The claims of the '762 patent recite a specific and inventive combination of

elements that improve the performance of VoIP-capable networks in a manner that is not routine

or conventional.  Unlike conventional VoIP solutions connected to a central server, the claimed

invention enables continuity of voice and video communication links when network connections

are unexpectedly terminated or not yet established.  Using the claimed inventions, VoIP

communications can be established and maintained without a centralized server.

39.     The claims of the '762 patent specify particularized, technical means for

achieving improved mobility, including for example: (1) VoIP nodes in a cluster in

communication with one another; (2) the VoIP nodes comprise a local SIP registry built by

exchanging SIP information with other VoIP nodes in a cluster; and (3) establishing VoIP client

device communications using the local SIP registries of the VoIP nodes.

40.     The '762 patent claims present specific technical, non-conventional and non-

routine advancements implementing distributed SIP functionality in VoIP networks in a way that

enhances availability, efficiency, and reliability.

## Pre-Suit Communications

41.     MeshDynamics met (multiple times) with Cisco in or around 2009 to discuss a

potential partnership for wireless mesh networking technology.  Those discussions included

senior Cisco decision makers, including Cisco's then-Senior Director and CTO.  It also included

two of Cisco's venture capital representatives.  During the course of the discussions,

MeshDynamics disclosed at least one presentation with a detailed description of its technology

and identification of its key intellectual property, including then-pending patent applications

which matured into the Patents-in-Suit. For example, the presentation included identification of Application No. 12/352,457, which was published in 2010 and issued in 2013 as the '762 patent and Application No. 61/117,502, which was the provisional application that led to both the '852 and '000 patents.

42.     The discussions between the parties included the applicability of the then-patented (and patent-pending) technology to Cisco, its business, and its products including then-existing product lines. The parties discussed how the patented technology was fundamental and essential to Cisco's emerging mesh product lines and how Cisco could further build on MeshDynamics' technology, including but not limited to MeshDynamics' VoIP and video optimization intellectual property.

43.     The implementation details identified, discussed and/or shown have become integral components in Cisco's VoIP collaboration and networking solutions.

44.     On or about June 22, 2022, Mr. Francis DaCosta sent a letter ("the 2022 Notice Letter") to Mr. Charles H. Robbins by FedEx and e-mail in his capacity as Cisco's CEO, identifying the Patents-in-Suit and placing Cisco on actual notice of its infringement of the Patents-in-Suit in relation to Cisco's networking equipment/solutions and the deployment, management, and enablement of its customers' and/or end-users infringing networks.

45.     On information and belief, Cisco and Mr. Robbins received the 2022 Notice Letter on or about June 22, 2022.

46.     On information and belief, at all times from June 22, 2022, to the filing of this Complaint, Mr. Robbins has been a duly appointed officer of Cisco, holding the office of CEO.

47.     Neither Cisco nor Mr. Robbins ever responded to the 2022 Notice Letter.

48.     Despite Cisco's full knowledge of MeshDynamics' patents and their applicability to the Cisco Accused Products, Cisco has never taken a license.

**CLAIMS FOR RELIEF**

**Count I – Infringement of United States Patent No. 8,514,852**

49.     MeshDynamics repeats, realleges, and incorporates by reference, as if fully set forth here, the allegations of the preceding paragraphs above.

50.     Cisco (or those acting on its behalf) has made, used, offered for sale, sold, and/or imported products, including at least the '852/'000 Accused Products, that infringe (either literally or under the doctrine of equivalents) at least claim 1 of the '852 patent in violation of 35 U.S.C. § 271(a).  A comparison of claim 1 of the '852 patent to representative '852/'000 Accused Products is attached as Exhibit 4, the contents of which MeshDynamics incorporates by reference, as if fully set forth here.

51.     With knowledge of the '852 patent, Cisco has also indirectly infringed, and continues to indirectly infringe, claims of the '852 patent by actively inducing the direct infringement by third parties such as its customers and/or end-users of the '852/'000 Accused Products under 35 U.S.C. § 271(b).

52.     Since at least 2022, Cisco knowingly encouraged, and continues to encourage, its customers and/or end-users to directly infringe one or more claims of the '852 Patent, including by Cisco's actions that include, without limitation, instructing and encouraging its customers and/or end-users to use the '852/'000 Accused Products in an infringing manner through the

*offering, publishing, distribution, and propagation of, user guides, advertisements, blog posts, live events, promotional materials, and Technical Assistance Center support services.*[1]

53.    Cisco also induces direct infringement by its sales and advertisement of "Cisco Services," which assist its customers and/or end-users to "plan, deploy, manage, and support" the '852/'000 Accused Products.  Cisco also instructs and continues to instruct customers and/or end-users to use the '852/'000 Accused Products including, without limitation, through Cisco's website, which provides access to, and support for, using '852/'000 Accused Products.

54.    On information and belief, at least since Cisco's first knowledge of the '852 patent, Cisco understood that the acts Cisco induced its customers and/or end-users to take are actions that constitute patent infringement and that Cisco's encouraging acts resulted in direct infringement of one or more claims of the '852 patent by those customers and/or end-users performing each step of one or more methods recited in those claims, including at least claim 1.

55.    On information and belief, Cisco's customers and/or end-users directly infringe one or more claims of the '852 patent through their use of the '852/'000 Accused Products in accordance with Cisco's instruction and encouragement.  On information and belief, Cisco knew that those acts would constitute infringement and acted with the intent to encourage such infringement.  Alternatively, Cisco was willfully blind to that fact, deliberately avoiding learning of the infringement despite knowing that there is a high probability that the use by its customers and/or end-users would constitute direct infringement.

---

[1] *See, e.g.*, https://www.cisco.com/c/en/us/td/docs/routers/sdwan/configuration/policies/ios-xe-17/policies-book-xe/forward-error-correction.html;
https://www.cisco.com/c/en/us/td/docs/routers/sdwan/configuration/policies/vedge/policies-book/forward-error-correction.html; https://www.youtube.com/watch?v=0LP_XzdNmpU;
https://www.cisco.com/c/en/us/td/docs/solutions/CVD/SDWAN/cisco-sdwan-design-guide.html;
https://community.cisco.com/t5/networking-blogs/cisco-application-quality-of-experience-appqoe-for-wan/ba-p/4532204.

56.    The components of the '852/'000 Accused Products are specifically configured to function in accordance with the '852 patent claims and are material parts of the invention.

57.    In addition, as of the service of this Complaint, Cisco knows of the Patents-in-Suit, the alleged acts of direct infringement, and Cisco's role in encouraging those acts of infringement.  Its continuation of the above-referenced acts of inducement violates 35 U.S.C. § 271(b).

58.    Cisco has violated and continues to violate 35 U.S.C. § 271(c) because: (1) its customers and/or end-users directly infringe at least claim 1 of the '852 patent by using the '852/'000 Accused Products to meet each limitation of claim 1 as demonstrated in Exhibit 4; (2) at least as early as 2022 Cisco knew that the combination of the components of the '852/'000 Accused Products, which are designed and configured to interoperate as an integrated network, were both patented and infringed one or more claims of the '852 patent, including claim 1 of the '852 patent; and (3) the components of the '852/'000 Accused Products are specifically configured to function in accordance with the '852 patent's claims and are material parts of the invention.

59.    In violation of 35 U.S.C. § 271(c), Cisco's contributory infringement includes offering to sell or selling within the United States, or importing into the United States, components of the patented invention of and/or a material or apparatus for use in practicing at least claim 1 of the '852 patent, constituting a material part of the invention.  Cisco knows and has known the same to be specially made or especially adapted for use in an infringement of the '852 patent, and such components are not a staple article or commodity of commerce suitable for substantial non-infringing use.  For example, on information and belief, the '852/'000 Accused Products are not staple articles and are not a commodity of commerce suitable for substantial

non-infringing use, at least because the '852/'000 Accused Products are components of integrated networks, the interoperation of which infringes at least claim 1 of the '852 patent. The '852/'000 Accused Products are specially made or specially adapted for use in an infringement of the '852 patent, because they are designed for use in a network in a manner claimed by the '852 patent, and are not capable of substantial non-infringing use.

60.     In addition, as of the service of this Complaint, Cisco knows of the Patents-in-Suit, the alleged acts of direct infringement, Cisco's role in selling, offering to sell, or importing the components that are material parts of the patented invention, and that those components were specially made for, or adapted for, use in an infringing manner. Its continuation of the above-referenced acts of sale, offering for sale, or importation also violate 35 U.S.C. § 271(c).

61.     MeshDynamics (and any predecessors and/or licensees) complied with 35 U.S.C. § 287 during the relevant time period because the '852 patent contains method claims only.

62.     Cisco's past and ongoing direct infringement and indirect infringement was, and is, intentional, deliberate, willful, and malicious.

63.     MeshDynamics has been damaged by the direct and indirect infringement of Cisco and is suffering, and will continue to suffer, irreparable harm and damages as a result of that infringement. MeshDynamics will suffer further irreparable injury, for which it has no adequate remedy at law, unless and until Cisco is enjoined from infringing the claims of the '852 patent.

## Count II – Infringement of United States Patent No. 9,049,000

64.     MeshDynamics repeats, realleges, and incorporates by reference, as if fully set forth here, the allegations of the preceding paragraphs above.

65.    Cisco (or those acting on its behalf) has made, used, offered for sale, sold, and/or imported products, including at least the '852/'000 Accused Products, that infringe (either literally or under the doctrine of equivalents) at least claim 1 of the '000 patent in violation of 35 U.S.C. § 271(a).  A comparison of claim 1 of the '000 patent to representative '852/'000 Accused Products is attached as Exhibit 5, the contents of which MeshDynamics incorporates by reference, as if fully set forth here.

66.    With knowledge of the '000 patent, Cisco has also indirectly infringed, and continues to indirectly infringe, claims of the '000 patent by actively inducing the direct infringement by third parties such as its customers and/or end-users of the '852/'000 Accused Products under 35 U.S.C. § 271(b).

67.    Since at least 2022, Cisco knowingly encouraged, and continues to encourage, its customers and/or end-users to directly infringe one or more claims of the '000 patent, including by Cisco's actions that include, without limitation, instructing and encouraging its customers and/or end-users to use the '852/'000 Accused Products in an infringing manner through the offering, publishing, distribution, and propagation of, user guides, advertisements, blog posts, live events, promotional materials, and Technical Assistance Center support services.[2]

68.    Cisco also induces direct infringement by its sales and advertisement of "Cisco Services" which assist its customers and/or end-users to "plan, deploy, manage, and support" the '852/'000 Accused Products.  Cisco also instructs and continues to instruct customers and/or end-users to use the '852/'000 Accused Products including, without limitation, through Cisco's website, which provides access to, and support for, using the '852/'000 Accused Products.

---

[2] *See, e.g.*, *id.*

69.     On information and belief, at least since Cisco's first knowledge of the '000 patent, Cisco understood that the acts Cisco induced its customers and/or end-users to take are actions that constitute patent infringement and that Cisco's encouraging acts resulted in direct infringement of one or more claims of the '000 patent by those customers and/or end-users performing each step of one or more methods recited in those claims, including at least claim 1.

70.     On information and belief, Cisco's customers and/or end-users directly infringe one or more claims of the '000 patent through their use of the '852/'000 Accused Products in accordance with Cisco's instruction and encouragement.  On information and belief, Cisco knew that those acts would constitute infringement and acted with the intent to encourage such infringement.  Alternatively, Cisco was willfully blind to that fact, deliberately avoiding learning of the infringement despite knowing that there is a high probability that the use by its customers and/or end-users would constitute direct infringement.

71.     The components of the '852/'000 Accused Products are specifically configured to function in accordance with the '000 patent claims and are material parts of the invention.

72.     In addition, as of the service of this Complaint, Cisco knows of the Patents-in-Suit, the alleged acts of direct infringement, and Cisco's role in encouraging those acts of infringement.  Its continuation of the above-referenced acts of inducement violates 35 U.S.C. § 271(b).

73.     Cisco has violated and continues to violate 35 U.S.C. § 271(c) because: (1) its customers and/or end-users directly infringe at least claim 1 of the '000 patent by using the '852/'000 Accused Products to meet each limitation of claim 1 as demonstrated in Exhibit 5; (2) at least as early as 2022 Cisco knew that the combination of the components of the '852/'000 Accused Products, which are designed and configured to interoperate as an integrated network,

were both patented and infringed one or more claims of the '000 patent, including claim 1 of the '000 patent; and (3) the components of the '852/'000 Accused Products are specifically configured to function in accordance with the '000 patent's claims and are material parts of the invention.

74.    In violation of 35 U.S.C. § 271(c), Cisco's contributory infringement includes offering to sell or selling within the United States, or importing into the United States, components of the patented invention of and/or a material or apparatus for use in practicing at least claim 1 of the '000 patent, constituting a material part of the invention.  Cisco knows and has known the same to be specially made or specially adapted for use in an infringement of the '000 patent, and such components are not a staple article or commodity of commerce suitable for substantial non-infringing use.  For example, on information and belief, the '852/'000 Accused Products are not staple articles and are not a commodity of commerce suitable for substantial non-infringing use, at least because the '852/'000 Accused Products are components of integrated networks, and the interoperation of which infringes at least claim 1 of the '000 patent. The '852/'000 Accused Products are specially made or specially adapted for use in an infringement of the '000 patent, because they are designed for use in a network in a manner claimed by the '000 patent, and are not capable of substantial non-infringing use.

75.    In addition, as of the service of this Complaint, Cisco knows of the Patents-in-Suit, the alleged acts of direct infringement, Cisco's role in selling, offering to sell, or importing the components that are material parts of the patented invention, and that those components were specially made for or adapted for use in an infringing manner.  Its continuation of the above-referenced acts of sale, offering for sale, or importation also violate 35 U.S.C. § 271(c).

76.    MeshDynamics (and any predecessors and/or licensees) complied with 35 U.S.C. § 287 during the relevant time period because the '000 patent contains method claims only.

77.    Cisco's past and ongoing direct infringement and indirect infringement was and is intentional, deliberate, willful, and malicious.

78.    MeshDynamics has been damaged by the direct and indirect infringement of Cisco and is suffering, and will continue, to suffer irreparable harm and damages as a result of that infringement.  MeshDynamics will suffer further irreparable injury, for which it has no adequate remedy at law, unless and until Cisco is enjoined from infringing the claims of the '000 patent.

## Count III – Infringement of United States Patent No. 8,477,762

79.    MeshDynamics repeats, realleges, and incorporates by reference, as if fully set forth here, the allegations of the preceding paragraphs above.

80.    Cisco (or those acting on its behalf) has made, used, offered for sale, sold, and/or imported products, including at least the '762 Accused Products, that infringe (either literally or under the doctrine of equivalents) at least claim 1 of the '762 patent in violation of 35 U.S.C. § 271(a).  A comparison of claim 1 of the '762 patent to representative '762 Accused Products is attached as Exhibit 6, the contents of which MeshDynamics incorporates by reference, as if fully set forth here.

81.    Cisco has also indirectly infringed, and continues to indirectly infringe, claims of the '762 patent by actively inducing the direct infringement by third parties such as its customers and/or end-users of the '762 Accused Products under 35 U.S.C. § 271(b).

82.    Since at least 2022, Cisco knowingly encouraged, and continues to encourage, its customers and/or end-users to directly infringe one or more claims of the '762 patent, including

by Cisco's actions that include, without limitation, instructing and encouraging its customers and/or end-users to use the '762 Accused Products in an infringing manner through the offering, publishing, distribution, and propagation of, user guides, advertisements, blog posts, live events, promotional materials, and Technical Assistance Center support services.[3]

83.    Cisco also induces the direct infringement by its sales and advertisement of "Cisco Services" which assist its customers and/or end-users to "plan, deploy, manage, and support" the '762 Accused Products.  Cisco also instructs and continues to instruct customers and/or end-users to use the '762 Accused Products including, without limitation, through Cisco's website, which provides access to, and support for, using the '762 Accused Products.

84.    On information and belief, at least since Cisco's first knowledge of the '762 patent, Cisco understood that the acts Cisco induced its customers and/or end-users to take are actions that constitute patent infringement and that Cisco's encouraging acts resulted in direct infringement of one or more claims of the '762 patent by those customers and/or end-users making and using the VoIP systems and methods recited in those claims, including at least claim 1.

85.    Cisco's customers and/or end-users directly infringe one or more claims of the '762 patent through their use of the '762 Accused Products in accordance with Cisco's instruction and encouragement.  On information and belief, Cisco knew that those acts would constitute infringement and acted with the intent to encourage such infringement.  Alternatively,

---

[3] *See, e.g.*, https://www.webex.com;
https://www.cisco.com/c/en/us/td/docs/solutions/PA/overview/12xy/hybpa12x.html;
https://help.webex.com/en-us/article/nk1shtj/Get-started-with-Webex-Calling;
https://help.webex.com/en-us/article/ggaigh/Get-Started-with-Enhanced-Survivability;
https://help.webex.com/en-us/article/d68vi1/Site-survivability-for-Webex-Calling;
https://www.ciscolive.com/c/dam/r/ciscolive/emea/docs/2023/pdf/BRKCOL-2993.pdf;
https://www.ciscolive.com/c/dam/r/ciscolive/apjc/docs/2024/pdf/BRKCOL-1527.pdf.

Cisco was willfully blind to that fact, deliberately avoiding learning of the infringement despite knowing that there is a high probability that the use by its customers and/or end-users would constitute direct infringement.

86.     The components of '762 Accused Products are specifically configured to function in accordance with the '762 patent claims and are material parts of the invention.

87.     In addition, as of the service of this Complaint, Cisco knows of the Patents-in-Suit, the alleged acts of direct infringement, and Cisco's role in those acts of infringement.  Its continuation of the above-referenced acts of active inducement also violates 35 U.S.C. § 271(b).

88.     Cisco has violated and continues to violate 35 U.S.C. § 271(c) because: (1) its customers and/or end-users directly infringe at least claim 1 of the '762 patent by making and using the '762 Accused Products to meet each limitation of claim 1 as demonstrated herein; (2) at least as early as 2022 Cisco knew that the combination of the components of the '762 Accused Products, which are designed and configured to interoperate as integrated networks, were both patented and infringed one or more claims of the '762 patent, including claim 1 of the '762 patent; and (3) the components of the '762 Accused Products are specifically configured to function in accordance with the '762 Patent's claims and are material parts of the invention.

89.     In violation of 35 U.S.C. § 271(c), Cisco's contributory infringement includes offering to sell or selling within the United States, or importing into the United States, components of the patented invention of and/or a material or apparatus for use in practicing at least claim 1 of the '762 patent, constituting a material part of the invention.  Cisco knows and has known the same to be specially made or specially adapted for use in an infringement of the '762 patent, and such components are not a staple article or commodity of commerce suitable for substantial non-infringing use.  For example, on information and belief, the '762 Accused

Products are not staple articles and are not a commodity of commerce suitable for substantial non-infringing use, at least because the '762 Accused Products are components of integrated networks, the interoperation of which infringes at least claim 1 of the '762 patent.  The '762 Accused Products are specially made or specially adapted for use in an infringement of the '762 patent, because they comprise the VoIP-capable networks claimed by the '762 patent, and are not capable of substantial non-infringing use.

90.     In addition, as of the service of this Complaint, Cisco knows of the Patents-in-Suit, the alleged acts of direct infringement, Cisco's role in selling, offering to sell, or importing the components that are material parts of the patented invention, and that those components were specially made for or adapted for use in an infringing manner.  Its continuation of the above-referenced acts of sale, offering for sale, or importation also violate 35 U.S.C. § 271(c).

91.     MeshDynamics (and any predecessors and/or licensees) complied with 35 U.S.C. § 287 because those entities did not make, offer for sale, sell or import into the United States any products that practice the '762 patent during the relevant time period or were not otherwise required to mark.  To the extent that any products are found to have practiced the '762 patent, MeshDynamics complied with § 287 by marking its products using the Internet and affixing the patent number to instructions, guides and warranties that were provided with any products sold at the point-of-sale.

92.     Cisco's past and ongoing direct infringement and indirect infringement was, and is, intentional, deliberate, willful, and malicious.

93.     MeshDynamics has been damaged by the direct and indirect infringement of Cisco and is suffering, and will continue to suffer, irreparable harm and damages as a result of that infringement.  MeshDynamics will suffer further irreparable injury, for which it has no

adequate remedy at law, unless and until Cisco is enjoined from infringing the claims of the '762 patent.

## JURY DEMANDED

94.    Pursuant to Federal Rule of Civil Procedure 38(b), MeshDynamics hereby requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

MeshDynamics respectfully requests this Court to enter judgment in its favor and against Cisco as follows:

a.    finding that Cisco has infringed, literally or under the doctrine of equivalents, one or more claims of the '852, '000, and '762 patents under 35 U.S.C. §§ 271(a), (b), and (c);

b.    requiring Cisco to pay MeshDynamics its damages (past, present and future), costs, expenses, and pre-judgment interest for Cisco's infringement;

c.    finding that Cisco's infringement has been willful and requiring Cisco to pay enhanced damages;

d.    requiring Cisco to pay MeshDynamics compulsory ongoing licensing fees, as determined by the Court;

e.    requiring Cisco to provide an accounting and to pay supplemental damages for infringing products released after the filing of this Complaint that are not colorably different from the Accused Products;

f.    finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding MeshDynamics its reasonable attorneys' fees against Cisco;

g.  permanently enjoining Cisco, its officers, agents, employees, attorneys, and all persons in active concert or participation with it, from infringing the claims of the '852, '000, and '762 patents; and

h.  awarding such costs and other relief that the Court determines to be just and equitable.

Dated: June 6, 2025                    Respectfully submitted,

                                       */s/ Elizabeth Bernard*
                                       Scott R. Samay* (*pro hac vice to be filed*)
                                       Jason S. Charkow* (*pro hac vice to be filed*)
                                       Elizabeth Bernard* (admitted DC Bar No. 986675)
                                       Oded Burger* (admitted NYS Bar No. 4910808)
                                       Lisa Phillips* (*pro hac vice to be filed*)
                                       Taylor Lepore* (*pro hac vice to be filed*)
                                       Erin Hadi* (*pro hac vice to be filed*)
                                       ssamay@daignaultiyer.com
                                       jcharkow@daignaultiyer.com
                                       ebernard@daignaultiyer.com
                                       oburger@daignaultiyer.com
                                       lphillips@daignaultiyer.com
                                       tlepore@daignaultiyer.com
                                       ehadi@daignaultiyer.com
                                       **DAIGNAULT IYER LLP**
                                       8229 Boone Blvd - Suite 450
                                       Vienna, VA 22182

                                       *Attorneys for Plaintiff  DYNAMIC MESH
                                       NETWORKS, INC. D/B/A MESHDYNAMICS*

                                       *Not admitted to practice in Virginia